UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARLOS SUBER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15 CV 1363 RWS |
| | ) |
| FREDRICK LEMONS, et al., | ) |
| | ) |
| Defendants, | ) |

## MEMORANDUM AND ORDER

This matter is before me on defendants Fredrick Lemons, Marchelli Jemerson, Jessie Meinhardt, Carl Coleman, Dour Nodari, and Charles Adams' motions to dismiss.[1] Plaintiff Carlos Suber opposes the motions to dismiss. For the following reasons, defendants' motions will be granted.[2]

### BACKGROUND

Suber brings this action pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986 alleging violations of his civil rights. He also alleges state law claims for false imprisonment, malicious prosecution, and intentional infliction of emotional distress. Named as defendants are the following members of the University City Police Department: Frederick Lemons, Marchelli Jemerson, Jessie Meinhardt, Carl Coleman, Dour Nodari, and Charles Adams.

---

[1] On July 26, 2017, I conducted an initial review of plaintiff's amended complaint under 28 U.S.C. § 1915(e), and found it was non-frivolous with respect to plaintiff's individual capacity claims against defendants Fredrick Lemons, Jessie Meinhardt, Marchelli Jemerson, Charles Adams, Carl Coleman, and Dour Nodari. See ECF No. 49. All other defendants have been dismissed without prejudice.

[2] Defendants' memoranda in support of their motions to dismiss are identical, although they were filed on different dates by different defendants. See ECF Nos. 58, 72, and 96.

Suber alleges that several detectives of the University City Police Department conspired to violate his rights under the Fourth Amendment by arresting him without probable cause on October 30, 2012, and holding him into the afternoon of October 31, 2012. He asserts the detectives circumvented procedures by using an unconstitutional lineup, an administrative warrant, and an unlawful interrogation that resulted in a false arrest and false imprisonment.[3] Suber seeks damages of $301,642.80 against defendants and punitive damages of $60,000 per defendant. Defendants move to dismiss Suber's claims, stating they are entitled to qualified immunity.

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556

---

[3] Suber's reference to an "administrative warrant" is a reference to Missouri Revised Statute § 544.170, which states:

> **Twenty hours detention on arrest without warrant—twenty-four hours detention for certain offenses, rights of confinee—violations, penalty.—**1. All persons arrested and confined in any jail or other place of confinement by any peace officer, without warrant or other process, for any alleged breach of the peace or other criminal offense, or a suspicion thereof, shall be discharged from said custody within twenty-four hours from the time of such arrest, unless they shall be charged with a criminal offense by the oath of some credible person, and be held by warrant to answer to such offense.
> 2. In any confinement to which the provisions of this section apply, the confinee shall be permitted at any reasonable time to consult with counsel or other person acting on the confinee's behalf.
> 3. Any person who violates the provisions of this section, by refusing to release any person who is entitled to release pursuant to this section, or by refusing to permit a confinee to consult with counsel or other persons, or who transfers any such confinees to the custody or control of another, or to another place, or who falsely charges such person, with intent to avoid the provisions of this section, is guilty of a class A misdemeanor.

(2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

**FACTS**

Based on Suber's factual account and viewed in the light most favorable to him, University City detectives went to his home on October 29, 2012, to talk to him about a double murder that had occurred that day. Suber's complaint is silent about what, if any, conversations occurred between him and the detectives on that date. On the next day, Suber's attorney arranged a meeting between Suber and the detectives to be held on October 30, 2012, at 3:00 p.m. at the University City Police Department. Hours before this scheduled meeting, and unbeknownst to Suber and his attorney, defendants Marchelli Jemerson and Jessie Meinhardt arranged witnesses to the murders to view a physical lineup, which would include Suber, at the St. Louis County Justice Center. When Suber and his attorney arrived for the 3:00 p.m. scheduled meeting, Nodari told them there was no warrant for Suber's arrest and took them to be interviewed.

During the interview, however, Suber was read his Miranda rights, and Jemerson told him and his attorney that he was being arrested for an outstanding traffic warrant in Pagedale. The detectives assured his attorney there was a bond for the traffic warrant. At this point, his attorney asked if Suber was going to Pagedale "and that's it," and Jemerson replied yes. Suber's

3

attorney left, telling Suber to call him "right away if anything comes out of this." Jemerson escorted Suber's attorney out.

After Suber's attorney left, Defendants Jemerson, Meinhardt, and Lemons transported Suber to the St. Louis County Jail to participate in the pre-arranged lineup. During this car ride, defendants did not respond to his questioning as to where they were going, and did not respond to his repeated requests for his attorney.

Jemerson and Meinhardt had previously arranged with Captain Bill Trachsel of the St. Louis County Justice Center for Suber to appear in a lineup. Meinhardt contacted Captain Trachsel at 2:00 p.m. to arrange the lineup. At 2:30 p.m., Meinhardt contacted two witnesses to the double homicide, both of whom agreed to view the lineup. At least one of the witnesses was transported to the Justice Center by a University City detective.

During the lineup, the first witness identified Suber as the man he saw running away from the scene of the double homicide. The second witness identified two of the men in the lineup as looking like the man she saw running from the homicide. She thought Suber looked a lot like the suspect, but said that she could not say for certain. After the lineup, on the return trip to the University City Police Department, Suber continued to question the officers about what had happened and whether he could call his lawyer. Lemons told Suber that "he was so lucky he should play the lottery."

At 4:33 pm on October 30, 2012, Jemerson booked Suber on two counts of first degree murder. Suber's outstanding traffic warrant from Pagedale was also listed on the booking sheet. Upon his return to the University City Police Department, Suber was placed in a basement holding cell. Although the holding cell had a pay phone, when Suber called his mother, his call

4

was disconnected. At that point, Suber states Lemons came downstairs and told him, "No one will be able to help [him] get out of this."

In the meantime, however, Suber's mother and grandmother had paid Suber's bond in Pagedale, and had reported to the University City Police Department. At the University City Police Department, officers separated the two women, and interviewed Suber's mother. Detectives asked Suber's grandmother for permission to search her home, specifically Suber's room, and she agreed. Suber was released during the afternoon of the next day, October 31, 2012. Lemons told him he could go, but also promised Suber that he would be charged with the murders.

Nearly three months later, on January 23, 2013, a warrant was issued for Suber's arrest for the murders. An indictment was filed on March 13, 2013. No further proceedings were held in this matter, and Suber's criminal case was dismissed by the prosecutor.

## DISCUSSION

A.  42 U.S.C. § 1983

Defendants seek dismissal of Suber's § 1983 claims on the ground that they are shielded from § 1983 liability by the doctrine of qualified immunity. When false arrest is alleged, the test for qualified immunity is "whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officer possessed." Anderson v. Creighton, 483 U.S. 635, 641 (1987). Even if probable cause is absent for an arrest, defendants may be entitled to qualified immunity. See Arnott v. Mataya, 995 F.2d 121, 123 (8th Cir. 1993). The question of qualified immunity is ordinarily one of law, and the Supreme Court has stated that immunity should be determined at the earliest possible stage in litigation. Id. (citing Hunter v. Bryant, 502 U.S. 224 (1991)). In analyzing the officials' claim of qualified

immunity, courts consider two questions: (1) whether the facts that a plaintiff has alleged, when viewed in the light most favorable to the plaintiff, support a finding that the conduct of defendants violated a constitutional right and (2) whether that constitutional right was "clearly established" such that a reasonable official would have known that his actions were unlawful. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223 (2009)).

The defendant bears the burden of proof to establish the affirmative defense of qualified immunity. Smith v. City of Minneapolis, 754 F.3d 541, 546 (8th Cir. 2014). However, "the plaintiff must demonstrate that the [constitutional right] was clearly established." Id. "A right is clearly established if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. A plaintiff can meet this standard by identifying "cases of controlling authority in their jurisdiction at the time of the incident or to a consensus of cases of persuasive authority . . . ." Ashcroft v. al-Kidd, 563 U.S. 731, 746 (2011). No case on point is required per se, "but existing precedent must have placed the statutory or constitutional question beyond debate." Smith v. City of Minneapolis, 754 F.3d at 546. I apply these rules to address qualified immunity in each of Suber's claims below.

### (1) Fourth Amendment

Suber alleges that the defendants arrested him on a traffic-related arrest warrant as a pretext to investigate the double murder case. He argues that he was eventually arrested and booked on the double murder without probable cause on October 30, 2012. Defendants counter that, by arresting Suber on a facially valid warrant, they did not violate any clearly established constitutional right. They further argue that Suber's eventual grand jury indictment proves that they had probable cause for his arrest.

There is no controlling Eighth Circuit precedent holding that pretextual arrests violate the Fourth Amendment. In lieu of controlling authority, Suber cites a Ninth Circuit case, Taglavore v. United States, 291 F.2d 262, (9th Cir. 1961), a vacated Eighth Circuit case, Warren v. City of Lincoln, Nebraska, 816 F.2d 1254 (8th Cir. 1987), on reh'g, 864 F.2d 1436 (8th Cir. 1989), and an abrogated Supreme Court case, United States v. Lefkowitz, 285 U.S. 452 (1932). These cases do not place Suber's argument beyond debate. In Lefkowitz, the Supreme Court held that "an arrest may not be used as a pretext to search for evidence." That holding was abrogated through a series of Supreme Court cases decided between 1947 and 1950, from which the "search-incident-to-arrest exception" arose. See Arizona v. Gant, 556 U.S. 332, 350 (2009). In Warren, the Eighth Circuit cited Lefkowitz and Taglavore[4] in holding that "[a]n arrest ostensibly for one purpose but in reality for the primary purpose of furthering an ulterior goal is unreasonable under the fourth and fourteenth amendments." 816 F.2d at 1257. That opinion was automatically vacated when the petition for rehearing was granted. 864 F.2d 1436, n. 2 (8th Cir. 1989). Finally, Taglavore represents a special circumstance where police executed a "deliberate, pre-planned scheme" to wait and serve a traffic warrant at a time when the suspect might have narcotics in his possession. United States v. Espinosa, 827 F.2d 604, 609 (9th Cir. 1987).

In Suber's case, the police allegedly used a facially valid arrest warrant to investigate Suber for double murder. Suber does not claim that the officers timed their arrest so as to catch him in the act of a crime. In his arguments, Suber does not cite controlling authority nor a "consensus of cases of persuasive authority," that are applicable to his allegations. As a result,

---

[4] The vacated opinion in Warren also cites a Missouri Supreme Court case for the proposition that "an arrest may not be used as a pretext to search for evidence." Missouri v. Blair, 691 S.W.2d 259, 262 (Mo. 1985). This holding was overturned in Missouri v. Mease, 842 S.W.2d 98, 105–06 (Mo. 1992) ("[S]o long as the police do no more than they are objectively authorized and legally permitted to do, an officer's motives in making an arrest are irrelevant and not subject to inquiry.").

Suber has not demonstrated that his right to be free from a pretextual arrest in this circumstance is clearly established. The defendants are therefore entitled to qualified immunity against Suber's Fourth Amendment false arrest claim.

*(2) Fifth Amendment*

Suber claims defendants violated his Fifth Amendment right against self-incrimination. "The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, requires that [n]o person . . . shall be compelled in any criminal case to be a witness against himself." Chavez v. Martinez, 538 U.S. 760, 766 (2003). Suber does not point to any statements he made involuntarily or any actions that violated his Fifth Amendment right against self-incrimination. Throughout the entire ordeal, Suber steadfastly denied any involvement in the double homicide. Moreover, the Eighth Circuit has indicated that illegally obtained statements would need to be used at trial to trigger damages in a § 1983 action. See Dowell v. Lincoln Cty., 927 F. Supp. 2d 741, 749 (E.D. Mo. 2013) (citing Winslow v. Smith, 696 F.3d 716 (8th Cir. 2012)). Here, Suber did not make any incriminating statements to police, and he never went to trial. Therefore I will grant defendants' motions to dismiss as they relate to Suber's Fifth Amendment claims regarding self-incrimination.

*(3) Sixth Amendment*

Suber alleges defendants violated his Sixth Amendment right to counsel. "Once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings, including interrogation by the State." Stewart v. Wagner, 836 F.3d 978, 985 (8th Cir. 2016); see also Kansas v. Ventris, 556 U.S. 586, 591-92 (2009) (holding the Sixth Amendment right to counsel "is infringed at the time of the interrogation"). Adversarial proceedings can be initiated by

8

"formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689 (1972). The bright line rule is that adversarial proceedings began at "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction . . . ." Rothgery v. Gillespie County, 554 U.S. 191, 213 (2008).

Adversarial proceedings had not been initiated at the time that Suber alleges he was denied access to his attorney. Suber had been arrested, transported to jail, and given his Miranda warnings. But he had not been arraigned. No formal charge or indictment had been filed until three months later, and no preliminary hearing had been held. As a result, adversarial proceedings had not begun at the time of Suber's arrest and detainment on October 30, 2012. It is during this time that Suber was allegedly deprived of access to his attorney. As a result, Suber has not stated a plausible § 1983 claim for violation of his Sixth Amendment right to counsel.

### (4) Eighth Amendment

Suber also alleges a § 1983 claim under the Eighth Amendment for cruel and unusual punishment. Although "the Eighth Amendment has no application" until there has been a "formal adjudication of guilt," the Fourteenth Amendment gives state pretrial detainees rights that are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). As a pretrial detainee, Suber must proceed under the Fourteenth Amendment instead of the Eighth Amendment.

### (5) Fourteenth Amendment

To violate Suber's substantive due process rights under the Fourteenth Amendment, the alleged misconduct must both "shock the conscience," and violate a fundamental right. Schmidt v. Des Moines Pub. Schs., 655 F.3d 811, 816 (8th Cir.2011) ("To establish a violation, a plaintiff

9

must demonstrate both that the official's conduct was conscience-shocking, and that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty."). The Eighth Circuit has used a three-step process in evaluating such claims, by (1) "identify[ing] the individual liberty interests at stake," (2) analyzing the importance of the interests asserted, and (3) "assessing whether the government's contested actions are conscience shocking." Sheets v. Butera, 389 F.3d 772, 778 (8th Cir. 2004). The "conscience-shocking" standard is most likely to be reached when the conduct is "intended to injure in some way unjustifiable by any government interest." Chavez v. Martinez, 538 U.S. 760, 775 (2003). "[A]cts arising out of a defendant's deliberate indifference will not sustain a substantive due process claim." Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002). Instead, acts that are "severe," "disproportionate to the need presented," or "inspired by malice or sadism," rather than "unwise excess of zeal," such that they amount to a "brutal and inhumane abuse of official power" will shock the conscience. Id. (quoting In re Scott County Master Docket, 672 F.Supp. 1152, 1166 (D. Minn. 1987)).

In his complaint, Suber alleges that his liberty interests were infringed by acts motivated by "unlawful personal vendettas." Defendant Lemons, for example, allegedly said "I promise I'm going to charge you no matter what," "I'm going to put the nail in your coffin," and "get your stuff, you'll probably get killed before I get the warrant anyway." Elsewhere, Suber implies that the defendants held him in custody beyond the time necessary to process him for the underlying crime.

These allegations do not state a claim that the defendants violated Suber's substantive due process rights. Certain threats towards prisoners or defendants can violate substantive due process. See Burton v. Livingston, 791 F.2d 97, 99–100 (8th Cir. 1986) (finding a prison guard's

act of drawing a loaded pistol, pointing it at a prisoner and ordering him to run constituted a substantive due process violation). However, "mere verbal threats made by a state-actor do not constitute a § 1983 claim." King v. Olmsted Cty., 117 F.3d 1065, 1067 (8th Cir. 1997). A threat effects "an actionable constitutional violation only when" it is "brutal or wantonly cruel" or it "exerts coercive pressure" to deprive the plaintiff of a constitutional right. Id.

Suber does not allege that Lemons' threats themselves violated his constitutional rights. He does not allege a length of detention that shocks the conscience. See Luckes v. Cty. of Hennepin, Minn., 415 F.3d 936, 939-40 (8th Cir. 2005) (finding that twenty-four-hour detention did not violate plaintiff's substantive due process interest in freedom from incarceration). Further, Suber cannot prove an underlying constitutional violation related to this threat, and he does not allege that Lemons' threats are brutal or wantonly cruel. As a result, he has not alleged facts sufficient to state a claim for a substantive due process violation.

B. 42 U.S.C. § 1985

Title 42 U.S.C. § 1985(3) provides in pertinent part:

> If two or more persons . . . conspire . . . for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To state a claim under § 1985(3), a plaintiff must establish that (1) he is a member of a class suffering from invidious discrimination, and (2) defendants' actions were motivated by racial animus or some other type of class-based discrimination. United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 834-39 (1983); Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971) (holding that plaintiff must allege these two elements to state a § 1985(3) claim). Nothing in the amended complaint indicates that Suber is a member of a protected class or that defendants were

11

motivated by purposeful, class-based discrimination. As a result, Suber's § 1985(3) claim will be dismissed.

C. 42 U.S.C. § 1986

Because a § 1986 action is dependent upon the existence of a § 1985 claim, Suber's § 1986 claim will also be dismissed. See McIntosh v. Ark. Republican Party-Frank White Election Comm., 766 F.2d 337, 340 (8th Cir. 1985).

D. 42 U.S.C. § 1981

In his response to defendants' motions to dismiss, Suber states that he voluntarily dismisses his claim brought under 42 U.S.C. § 1981. [ECF No. 74-1 at 5]. Accordingly, his claim arising under 42 U.S.C. § 1981 is dismissed.

E. State Law Claims

Because only state law claims remain in this matter, I will decline to exercise supplemental jurisdiction and will dismiss the case. See 28 U.S.C. § 1367(c)(3).

Accordingly,

**IT IS HEREBY ORDERED** that Suber's motion to supplement his response in opposition to defendants' motion to dismiss is **GRANTED**. [ECF No. 85].

**IT IS FURTHER ORDERED** that defendants Carl Coleman, Fredrick Lemons, Dour Nodari, Jessie Meinhardt, Charles Adams, and Marchelli Jemerson's motions to dismiss are **GRANTED** in part and **DENIED** in part as stated above. [ECF Nos. 57, 71, and 94].

**IT IS FURTHER ORDERED** that I decline to exercise supplemental jurisdiction over the remaining state law claims in this matter and this case is hereby **DISMISSED** without prejudice.

An Order of Dismissal will accompany this Memorandum and Order.

/s/ Rodney W. Sippel
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 21st day of March, 2018.